**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JAMES W. MOELLER,

       *Plaintiff*,

    v.                                                                    No. 19-cv-2330 (DLF)

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       *Defendant.*

**MEMORANDUM OPINION**

James Moeller, representing himself pro se, alleges that the Equal Employment

Opportunity Commission (the Commission) violated the Freedom of Information Act, 5 U.S.C. §

552 *et seq*. (FOIA), by withholding certain documents in response to his request for records

concerning "experience caps" in employment advertisements.[1]  Compl., Dkt. 1.  Before the

Court is the Commission's Motion for Summary Judgment, Dkt. 17.  For the reasons that follow,

the Court will deny the motion.

I.      **BACKGROUND**

On May 13, 2019, Moeller submitted to the Commission a FOIA request for copies of

"all documents and communications that address, discuss analyze or otherwise relate[] to the

legality . . . under the Age Discrimination In Employment Act ('ADEA') of experience caps in

job advertisements."  Def.'s Stmt. of Material Facts ¶ 1, Dkt. 17-4; Second Garner Decl. Ex. 1,

Dkt. 17-2 (Garner Decl.) (Moeller's FOIA request).  Moeller cited 29 C.F.R. § 1625.4(a), which

---

[1] Moeller explains that "[a]n experience cap is a requirement in a job ad that specifies that job
applicants must have, for example, 3 to 7 years of relevant experience."  Pl.'s Opp'n at 2, Dkt.
18.

states that "[h]elp wanted notices or advertisements may not contain terms and phrases that limit or deter the employment of older individuals."  Garner Decl. Ex. A.

The Commission's initial search in response to this request consisted of a single employee searching his individual email account for four hours, *see generally* Peeler Decl., Dkt. 17-3.  Once this litigation had commenced, however, the Commission chose to supplement this search with a broader one.  Garner Decl. ¶ 20.  On September 5, 2019, the Commission released its first disclosure to Moeller, which consisted of 1,949 pages of responsive documents.  *Id.* ¶¶ 10–19.  It redacted information under Exemptions 5, 6, and 7(C), and withheld in full three documents under Exemption 5.  *Id.*

On June 17, 2020, after the Commission's initial summary judgment motion in this matter had been filed, *see* Def.'s First Mot. for Summ. J., Dkt. 10, and Moeller had filed an opposition brief, *see* Pl.'s First Opp'n to Summ. J., Dkt. 11, the Commission released the results of its second search to Moeller, Garner Decl. ¶¶ 20, 39.  In total, the Commission released 1,042 records in full and withheld in full four documents under Exemption 5.  *Id.* ¶¶ 35, 37.  Because the supplemental search changed the nature of the parties' dispute, the Court denied the government's initial motion for summary judgment without prejudice.  *See* Minute Order of June 23, 2020.  The Commission subsequently renewed its motion for summary judgment, which is now ripe for review.[2]

## II.     LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a

---

[2] Moeller has not filed a Cross Motion for Summary Judgment.

federal agency moves for summary judgment in a FOIA case, the court views all facts and

inferences in the light most favorable to the requester, and the agency bears the burden of

showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003

(D.C. Cir. 2009).

To prevail under Rule 56, a federal agency "must prove that each document that falls

within the class requested either has been produced, is unidentifiable, or is wholly exempt from

the [FOIA's] inspection requirements."  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per

curiam) (internal quotation marks omitted).  The agency "must show beyond material doubt . . .

that it has conducted a search reasonably calculated to uncover all relevant documents,"

*Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983), and must also explain

why any of the nine enumerated exemptions listed in 5 U.S.C. § 552(b) apply to withheld

information, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006); *see also Mobley v.

CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (agency bears burden of justifying application of

exemptions, "which are exclusive and must be narrowly construed").

"The peculiarities inherent in FOIA litigation, with the responding agencies often in sole

possession of requested records and with information searches conducted only by agency

personnel, have led federal courts to rely on government affidavits to determine whether the

statutory obligations of the FOIA have been met."  *Perry*, 684 F.2d at 126.  Agency affidavits are

entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C.

Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains

reasonably specific detail and neither contradictory record evidence nor evidence of bad faith

calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir.

2013).  "[T]he vast majority of FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.   ANALYSIS

### A.   The Adequacy of the Search

Moeller challenges the adequacy of the Commission's search.  *See* Pl.'s Opp'n at 17–26. In particular, he argues that the Commission should not have imposed an arbitrary ten year timeframe on its search, that the Commission failed to uncover certain responsive documents, that most of the documents the Commission did release were irrelevant, and that the Commission should have more closely adhered to the wording of his request when constructing search terms. *Id.*

The adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  To survive a motion for summary judgment, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986) (internal quotation marks omitted) (emphasis in original); *see also SafeCard*, 926 F.2d at 1201.

"The agency has the initial burden to demonstrate the adequacy of its search, which it may meet by providing declarations or affidavits that are 'relatively detailed[,] . . . nonconclusory and submitted in good faith.'"  *Landmark Legal Found. v. Env't Prot. Agency*,

959 F. Supp. 2d 175, 181 (D.D.C. 2013) (internal quotation marks omitted).  A detailed affidavit "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched[.]"  *Oglesby*, 920 F.2d at 68. "Once the agency has provided a reasonably detailed affidavit describing its search, the burden shifts to the FOIA requester to produce 'countervailing evidence' suggesting that a genuine dispute of material fact exists as to the adequacy of the search."  *Hunton & Williams LLP v. U.S. Env't Prot. Agency*, 248 F. Supp. 3d 220, 236 (D.D.C. 2017) (citing *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)).

1.     *The Search*

The Commission's first search consisted of a single employee, who had been at the Commission for less than one year at the time of the search, searching his individual email account for responsive documents.  *See* Peeler Decl. ¶¶ 1, 5.  The Commission wisely elected to supplement this search with a broader search after this litigation began.  *See* Garner Decl. ¶¶ 22–25.  In the course of the supplemental search, the Commission identified other offices and officials who might have responsive records.  *Id.*  It then searched electronically for responsive documents in those locations, limiting the timeframe to May 13, 2010 through May 13, 2020.  *Id.* ¶¶ 25, 30.  The Commission also suggested particular search terms, including: "ADEA and advertising, ad, digital divide, digital technology, job advertising/ad, job applicants, recent college grad or graduate, over qualified, over 40, years of experience, age limitation, cap, age cap and applicant."  *Id.* ¶ 30.

Moeller argues that a genuine dispute of material fact exists because the Commission should not have limited its search to exclude responsive documents dated before May 2010. Pl.'s Opp'n at 20–21.  The Court agrees.  To comply with FOIA, an agency's search must be

5

"reasonably calculated to uncover all relevant documents," *Truitt v. Dep't of State*, 897 F.2d 540,

542 (D.C. Cir. 1990) (internal quotation marks omitted), not just relevant documents that fall

within a certain timeframe chosen by the agency. *See also Ancient Coin Collectors Guild v. U.S.*

*Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (noting that an agency must aver that "*all* files

likely to contain responsive materials (if such records exist) were searched" (internal quotation

marks omitted) (emphasis added))  And an agency "cannot limit its search to only one or more

places if there are additional sources that are likely to turn up the information requested."

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation

marks omitted).

In this case, the timeframe was imposed entirely by the Commission—it has no basis in

Moeller's original request. *See* Def.'s Stmt. of Material Facts ¶ 1 (Moeller requested: "*all*

documents and communications that address, discuss, analyze or otherwise related to the legality

. . . under the Age Discrimination in Employment Act ('ADEA') of experience caps in job

advertisements." (emphasis added)).  Indeed, Moeller points out that the Commission has

administered the relevant regulation about which he requested information for over *forty* years.

Pl.'s Opp'n at 20–21.  And the Commission has provided no record support for why its limitation

was reasonable in light of Moeller's broad request, which included no time limit.  *Id.*; *see also*

Garner Decl. ¶ 30 (stating, without explanation, that the Commission limited its search to

documents dated after 2010).  Nor has it provided evidence for why records in its custody

created before 2010 are not "likely to turn up the information" Moeller requested.  *Valencia-*

*Lucena*, 180 F.3d at 326, *see* Garner Decl. ¶ 30.  Accordingly, a dispute of fact exists as to

whether the search adequately sought out all responsive documents given the existence of likely

responsive pre-2010 documents.

The Commission's argument that its search was adequate because of the high volume of records it released does not change this result. *See* Def's Mot. for Summ. J. at 11. "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild*, 641 F.3d at 514 (internal quotation marks omitted). All the more where, as Moeller points out here, many of the documents released appear largely irrelevant to the original request. *See* Pl.'s Opp'n at 25. Thus, the Commission has not established that its search was adequate.

Moeller further challenges the adequacy of the search by pointing to documents from a 1994 investigation and lawsuit that he asserts should have been included in the Commission's releases. *See* Pl.'s Opp'n at 8. But "[i]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Ancient Coin Collectors Guild*, 641 F.3d at 514 (internal quotation marks omitted). What is more, the Commission stated in its declaration that the particular documents are no longer in its custody, *see* Supp. Garner Decl. ¶ 5, Dkt. 22-1, and "[a]n agency is required to produce only those records in its custody and control at the time of the FOIA request." *Penny v. U.S. Dep't of Justice*, 653 F. Supp. 2d 83, 85 (D.D.C. 2009). Given that the 1994 documents are outside of the Commission's custody and control, it bears no obligation to produce them.

### 2.     *The Search Terms*

As to the specifics of the Commission's search terms, Moeller notes that the Commission failed to include the relevant Code of Federal Regulations citation, or include the word "advertisement," instead of derivations of that word like "ad" and "advertising." Pl.'s Opp'n at 22. "In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015). The agency retains

"discretion in crafting a list of search terms that they believe[] to be reasonably tailored to uncover documents responsive to the FOIA request." *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (internal quotation marks omitted). "Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015).

Here, the Commission used the terms "ADEA and advertising, ad, digital divide, digital technology, job advertising/ad, job applicants, recent college grad or graduate, over qualified, over 40, years of experience, age limitation, cap, age cap and applicant." Garner Decl. ¶ 30. This list includes certain terms in Moeller's request, *compare* Def.'s Mot. for Summ. J. Ex. 1 (using the terms "ADA" "experience" and "cap"), yet omits others, *see* Pl.'s Opp'n at 22. Although it may ultimately be reasonable for the Commission to exclude the terms "advertisement" and the relevant Code of Federal Regulations citation, it has not provided any explanation for why it is reasonable to exclude these seemingly relevant terms. *See generally* Garner Decl.; Supp. Garner Decl. Accordingly, should the Commission choose to supplement the record, it should provide support for why excluding these search terms is reasonable in light of Moeller's original request.

**B.    The Exemptions**

1.    *Exemption 5*

The Commission withheld several documents under Exemption 5, both under the deliberative process privilege and under the attorney-client privilege. *See* Garner Decl. ¶¶ 16, 38. In total, the Commission withheld five documents under Exemption 5 in the course of its first search, *see id.*, and four documents in the course of its second search, *id.* ¶ 37.

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant—including . . . the attorney-client privilege, the work product privilege, and the deliberative process privilege." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotation marks omitted). To invoke the deliberative process privilege, an agency must show that the information withheld is both "predecisional" and "deliberative." *Id.* at 38 (internal quotation marks omitted). A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc. v. FDA* , 449 F.3d at 151 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

In *Judicial Watch, Inc. v. U.S. Department of Justice*, the Court identified several factors relevant to the Exemption 5 inquiry. 20 F. Supp. 3d 260, 269–72 (D.D.C. 2014). The first factor weighs "the timing of the document's release relative to the date the decision is made," *id.* at 269; *see also Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. U.S. Dep't of Labor*, 828 F. Supp. 2d 183, 189 (D.D.C. 2011) ("The timing of a record is important in the analysis; communications made after a decision has been made and designed to explain that decision are not privileged under Exemption 5."). The second factor considers "the relationship between the author and recipient of the document." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d at 270. The relevant question is "whether a person in the author's position, particularly a subordinate, would typically provide advice to a person in the recipient's position as part of the decision-making process." *Id.* The third factor concerns "the nature of the discussion in the

challenged document and, specifically, whether it sets out the author's view of options and

considerations regarding an agency's policy or, rather, explains or expresses the policy itself."

*Id.* at 271.  And for the fourth factor, "courts inquire as to whether the document was responsive

to a request, particularly a request from a senior official with decision-making authority to a

subordinate in an advisory position."  *Id.* at 272.

The attorney-client privilege covers "confidential communications from clients to their

attorneys, as well as communications from attorneys to their clients containing confidential

information supplied by the client."  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of*

*Justice*, 955 F. Supp. 2d 4, 20 (D.D.C. 2013).  For the privilege to apply, the Commission cannot

simply state that an attorney was involved in a legal discussion.  It "must establish each of the

following essential elements: (1) the holder of the privilege is, or sought to be, a client; (2) the

person to whom the communication is made is a member of the bar or his subordinate and, in

connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the

communication relates to a fact of which the attorney was informed by his client, outside the

presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been

claimed by the client."  *Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 153–54 (D.D.C.

2012).

The first document withheld after the initial search is "ADEA Promising Practices for

Avoiding Discrimination Against Older Workers."  Garner Decl. ¶ 16.  The Commission

justified the exemption by describing the document as a "[d]raft policy document [which] was

never finalized or issued by the Commission . . . [which] represents a predecisional internal

communication that reflects the analysis, recommendations or opinions of staff on legal or policy

matters."  *Id.*  The second document, which was only partially redacted, is "EEOC Training

Institute Resource Guide: Discussion of the Application of the Age Discrimination in

Employment Act." *Id.* The Commission explained it as material "containing comments,

opinions or analysis of agency staff offered for consideration in preparing the final document for

publication. This document was withheld under the deliberative process privilege as it represents

a predecisional internal communication that reflects the analysis, recommendations or opinions

of staff on legal or policy matters." *Id.* The third document is "Implementation of

Nondiscrimination and Equal Opportunity Provisions of the Workforce Innovation and

Opportunity Act (WOIA)." *Id.* The Commission explained: "Draft Rule of Department of Labor

sent to EEOC to solicit EEOC's views and analysis of rule before final publication." *Id.* The

fourth document is "E-mail: Subject: Question For Your Age," and the Commission explained its

exemption with the following: "[i]nternal e-mails chain to/from the Office of the Chair (OCH)

and Office of Legal Counsel (OLC) attorneys (Peggy Mastroianni, Raymond Peeler, Aaron

Konopasky, and Davis Kim) providing legal analysis and/or opinions, mental impressions and

theories regarding digital native and the application of the ADEA." *Id.* The Commission cited

both the deliberative process privilege and the attorney-client privilege for this document

because "it represents internal confidential communications between OCH and OLC attorneys

relating to a legal matter for which the OCH sought OLC's legal advice and opinions." *Id.*

Finally, the last document withheld in the initial search is "Phoenix District Complement Plan to

the Strategic Enforcement Plan." *Id.* The Commission justified the exemption by explaining

that the document is a "[d]raft internal plan sent to ADEA Division soliciting comments and

recommendations on enforcement strategies for the Commission's consideration." *Id.*

In the second search, the Commission withheld four documents. The first is "[d]raft

Section 2 of EEOC Compliance Manual, Threshold Issues," which the Commission described as

11

a "document containing redline comments by reviewers, marked revisions to draft." *Id.* ¶ 38.

The Commission justified the exemption by stating that "[t]he revisions were drafted to assist the

decision maker by recommending amendments to existing Commission policy," *id.*, and "[t]he

draft reflects internal EEOC staff opinions, recommendations, analysis and/or discussions as to

the relative merits of various positions or recommendations that may or may not reflect final

policy adopted by the Commission," *id.* The next withheld document is "Draft Section 10 of

EEOC Compliance Manual, Compensation Discrimination." *Id.* The Commission described an

"[i]nternal document reflecting the predecisional and deliberative recommendations and analysis

of the reviewer evidenced by strikethroughs of cases and text," and again "reflects internal

EEOC staff opinions, recommendations, analysis and/or discussions as to the relative merits of

various positions or recommendations that may or may not reflect final policy adopted by the

Commission," *id.* The third document is "Draft EEOC Enforcement Guidance on Employment

Agencies," once again described by the Commission as an "[i]nternal document reflecting the

predecisional and deliberative recommendations and analysis of the reviewer evidenced by

strikethroughs of cases and text . . . reflect[ing] internal EEOC staff opinions, recommendations,

analysis and/or discussions as to the relative merits of various positions or recommendations that

may or may not reflect final policy adopted by the Commission." *Id.* And finally, the fourth

document consists of additional pages of "[d]raft Section 2 of EEOC Compliance Manual,

Threshold Issues," *id.* withheld here again as an "[i]nternal document reflecting the predecisional

and deliberative recommendations and analysis of the reviewer evidenced by strikethroughs of

cases and text [and] reflect[ing] staff opinions, recommendations, analysis and/or discussions as

to the relative merits of various positions or recommendations that may or may not reflect final

policy adopted by the Commission." *Id.*

12

Overall, based on the Commission's scant record support for the nature of these documents, as detailed above, the Court is unable to determine whether or not the Commission properly withheld the documents pursuant to Exemption 5.  The Commission's record support is largely conclusory, repeats the same generalized language for several different documents, and does not engage with the relevant factors under the case law.

For example, the Commission's declarations do not explain the relative roles of those involved in the discussions, which is a critical factor in determining whether the materials are deliberative, *see Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d at 270.  The Commission simply refers to "staff," *see* Garner Decl. ¶ 16, or "the reviewer," *id.* ¶ 38, or "the decision maker," *id.*, without specifying whether the staff member(s) providing commentary were subordinate to those receiving comments or whether a superior requested the commentary. *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 20 F. Supp. 3d at 270 (listing both factors under the Exemption 5 inquiry).

The Commission also fails to explain in its declarations, beyond boilerplate conclusory statements, *see* Garner Decl. ¶¶ 16, 38, how the discussions were predecisional.  It does not explain the details of the specific agency decision process such that the Court could determine whether the discussions truly predated any agency decision or non-decision.  After all, "Exemption 5 applies only to communications before the adoption of an agency policy; communications that promulgate or implement an established policy are not privileged."  *Ryan v. DOJ*, 617 F.2d 781, 791 (D.C. Cir. 1980).

Finally, the Commission did not adequately support its assertion that one document was exempt from disclosure under the attorney-client privilege.  *See* Garner Decl. ¶ 16.  The Commission provided the following support for the exemption: "[t]he document was also

13

withheld under Attorney Client Privilege because it represents internal confidential

communications between OCH and OLC attorneys relating to a legal matter for which the OCH

sought OLC's legal advice and opinions." *Id.* This, without more, cannot establish that the

attorney-client privilege was properly invoked. For the privilege to apply, the Commission must

do more than merely state that attorneys were involved in giving legal advice. For example, the

Commission's declarations do not establish, as Moeller points out, *see* Pl.'s Opp'n at 16, that

"the communication relates to a fact of which the attorney was informed by his client, outside the

presence of strangers, for the purpose of securing legal advice," nor do the declarations address

the other elements of the attorney-client privilege. *Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d

at 153–54. In sum, the Commission has not met its burden to show that it properly invoked

Exemption 5 in withholding or redacting responsive records and is not entitled to summary

judgment on this issue.

>            2.        *Exemptions 6 and 7(C)*

The Commission also withheld certain information under Exemptions 6 and 7(C). *See*

Garner Decl. ¶ 17.

Exemption 6 allows an agency to withhold "personnel and medical files and similar files

the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5

U.S.C. § 552(b)(6). Exemption 7(C), meanwhile, protects law enforcement records or

information when disclosure "could reasonably be expected to constitute an unwarranted

invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). When evaluating an Exemption 6

withholding, courts must balance the privacy interests implicated by the records sought against

the public interest in their disclosure. *See Judicial Watch, Inc. v. FDA*, 449 F.3d at 153; *Nat'l*

*Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874, 879 (D.C. Cir. 1989). If the agency

identifies "a substantial privacy interest" to be protected, courts weigh that against the "only

relevant public interest," which is "the extent to which disclosure of the information sought

would shed light on an agency's performance of its statutory duties or otherwise let citizens

know what their government is up to." *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1332

(D.C. Cir. 2014) (internal quotation marks omitted). "A similar privacy interest versus public

benefit calculation applies with respect to . . . Exemption [7(C)]. However, the threshold

requirement for FOIA Exemption 7(C) is that the document at issue must have been compiled for

law enforcement purposes." *Schoenman v. FBI*, 575 F. Supp. 2d 136, 158 (D.D.C. 2008)

(internal quotation marks omitted).

Here, "[t]he information redacted was Personal Identifiable Information consisting of a

telephone number of a third party (1 line, page 3) pursuant to FOIA Exemption (b)(6)." Garner

Decl. ¶ 17. The declarations do not explain who this individual was nor the context of his or her

telephone number being disclosed. *Id.* It also does not explain whether or not the third party's

name was listed alongside the telephone number. *Id.* And the Commission does not establish

that the document was compiled "for law enforcement purposes," *Schoenman*, 575 F. Supp. 2d at

158, as required for Exemption 7(C) to apply. *See* Garner Decl. ¶ 11 (describing the document

as "ADEA Division Interview for News Article, dated October 17, 2018, 3 pages (e-mail chain

among OLC and OCLA staff regarding draft response to reporter's questions for news article)").

Accordingly, the Court proceeds to consider the material only under Exemption 6. "This

exemption creates a heavy burden; indeed, under Exemption 6, the presumption in favor of

disclosure is as strong as can be found anywhere in the Act." *Morley*, 508 F.3d at 1127 (internal

quotation marks omitted).

The D.C. Circuit has explained that "[a] substantial privacy interest is anything greater than a *de minimis* privacy interest," *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229–30 (D.C. Cir. 2008), and that "employees possess a legitimate privacy interest in their names and addresses," *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  But the Circuit has also explained that "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a *de minimis* threat depends on the characteristic(s) revealed by virtue of being on a particular list, and the consequences likely to ensue." *Morley*, 508 F.3d at 1128 (quoting *Nat'l Ass'n of Retired Fed. Emps.*, 879 F.2d at 877).  The Commission has failed to provide any record support for which consequences, if any, may result from disclosure of this phone number—let alone the circumstances surrounding the phone number in the context of the document.  Thus, it is not entitled to summary judgment.  *See id.* ("As the [agency] has failed to explain the extent of the privacy interest or the consequences that may ensue from disclosure, summary judgment was inappropriate.").

### C.    Foreseeable Harm

The Commission must also show foreseeable harm from disclosure to properly invoke a discretionary exemption.  *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018).  The FOIA Improvement Act, an amendment to FOIA, provides that an "agency shall withhold information" under Exemption 5, "only if" "the agency reasonably foresees that disclosure would harm an interest protected by" the exemption or if "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i) (FOIA Improvement Act); *see Judicial Watch, Inc. v. U.S. DOJ*, No. 17-cv-0832, 2019 WL 4644029, at *3 (D.D.C. Sept. 24, 2019).

The Commission does not articulate a specific foreseeable harm that is adequately connected to the underlying materials.  Instead, the Commission repeats for every document the same generalized statement of harm that could apply to *any* record exempted under Exemption 5.  *See* Garner Decl. ¶¶ 16, 38 ("Disclosing the draft to the public before the adoption of final EEOC policy would do harm by exposing the give and take of EEOC's consultative process, and likely cause confusion as to the actual Commission's Policy.").  These boilerplate repetitions are inadequate.  *See Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (rejecting "general explanations and boiler plate language" regarding foreseeable harm where "every Exemption 5 entry in the defendants' *Vaughn* Index recites the following three sentences, with only slight variation, as the justification for withholding the documents at issue" (internal quotation marks and emphasis omitted).  *Contra Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (accepting an agency's explanation of foreseeable harm where it "specifically focused on the information at issue" in concluding "that disclosure of that information would chill future internal discussions" (internal quotation marks omitted)).

As for the purported public confusion harm specifically, the D.C. Circuit has explained that public confusion is a "subsidiary rationale" for Exemption 5, and "has special force with respect to disclosures of agency positions or reasoning concerning proposed policies." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1436 n.10 (D.C. Cir. 1992).  The rationale "protects the public from the confusion that would result from *premature* exposure to discussions occurring *before* the policies affecting it had actually been settled upon." *Id.* at 1433 n.5 (internal quotation marks omitted) (emphasis added).  Here, the Commission does not provide any support for the point that the proposed policies have not yet been decided.  *See generally*

Garner Decl.  For this reason, the Court cannot determine whether that exposure would or would

not be premature.

Courts in this district frequently reject generalized explanations of harm removed from

the specific information at issue.  *See, e.g.*, *Danik v. DOJ*, 463 F. Supp. 3d 1, 10–11 (D.D.C.

2020); *Ctr. for Investigative Reporting v. U.S. Dep't of Interior*, No. 18-cv-1599, 2020 WL

1695175, at *4–5 (D.D.C. April 7, 2020); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 2019 WL

4644029, at *5; *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100

(D.D.C. 2019).  Here, the defendants' claims of foreseeable harm consist of "general

explanations" and "boiler plate language," *id.*, which do not satisfy the foreseeable-harm

requirement.

The Court will likewise reject the Commission's submission here.  "If the defendants

wish to establish foreseeable harm when they supplement the record, they will need to provide

context and insight into the specific decision-making processes or deliberations at issue, and how

they in particular would be harmed by disclosure."  *Ctr. for Investigative Reporting*, 436 F. Supp.

3d at 107 (internal quotation marks omitted).

### D.      Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. §

552(b).  The segregability requirement does not apply to non-exempt material that is

"inextricably intertwined" with exempt material, *Mead Data Cent., Inc. v. U.S. Dep't of Air

Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and agencies are entitled to a presumption that they

disclosed all reasonably segregable material, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106,

1117 (D.C. Cir. 2007).  Without adequate support for the Commission's exemptions and claims

of foreseeable harm, the Court is unable to determine whether non-exempt material was

appropriately segregated at this time.

## CONCLUSION

For the foregoing reasons, the Commission's motion for summary judgment is denied.  A

separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH

March 17, 2021                                                    United States District Judge

19